UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO.

INDIRA S. DUPOTEY-RUBI,

    Plaintiff,

v.

PENN CREDIT CORPORATION,

    Defendant.
_____/

**COMPLAINT**

(JURY TRIAL DEMANDED)

  Plaintiff Dr. Indira S. Dupotey-Rubi ("Rubi") alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters, and demand trial by jury:

I.
NATURE OF ACTION

  1. Rubi brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Penn Credit Corporation ("Penn Credit") – a collection agency specializing in debt collection through the use of automated telephone dialers – in negligently, knowingly, and/or willfully contacting her on both her residential and cellular telephone lines without prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Rubi seeks statutory damages for the TCPA violations committed by Penn Credit.

II.
JURISDICTION AND VENUE

  2. This Court has jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

  3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Penn Credit is a corporation deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the

action is commenced. Penn Credit's contacts with this District, including directing telephone calls into this District, are sufficient to subject it to personal jurisdiction in this District.

## III.
## PARTIES

4. Rubi is an individual and, at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39). Rubi is and, at all times mentioned herein, was a citizen and resident of Broward County, Florida.

5. Penn Credit is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Pennsylvania and whose primary corporate headquarters is at 916 South 14th Street, Harrisburg, Pennsylvania 17104. Penn Credit is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## IV.
## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## ((TCPA), 47 U.S.C. § 227)

6. To address consumer complaints regarding certain telemarketing practices, such as the use of automated telephone equipment, or "autodialers", Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("Voluminous complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA.").

7. Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call." TCPA, Pub. L. No. 102–243, §§ 12-13; *see also Mims*, 132 S. Ct. at 744. Nevertheless, Congress also found that "[t]echnologies that might allow consumers to avoid receiving [unwanted autodialed calls] calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. Accordingly, in enacting the TCPA, Congress explained that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call

> or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8. Specifically, the TCPA prohibits telephone calls to a residential line using an artificial or prerecorded voice without the prior express consent of the called party, unless (1) the call is initiated for emergency purposes, (2) the caller has an established business relationship with the called party, or (3) the call is made for a commercial purpose (but does not constitute telemarketing) and does not adversely affect privacy interests. 47 U.S.C. § 227(b)(1)(A)(iii); *id.* § 227 (b)(2)(B); *see also* 47 C.F.R. § 64.1200(a)(3).

9. The TCPA further prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the party called. 47 U.S.C. § 227(b)(1)(A)(iii).

## V.
## FACTUAL ALLEGATIONS

10. Since September 2013, Rubi has been a subscriber of Comcast's Xfinity Voice telephone service (which provides telephone services using Voice-over-IP technology), and has been assigned the (954) 404-7904 telephone number (the "7904 Number").

### I. The 7904 Number Is Assigned to Both a "Cellular Telephone Service" and "Residential Telephone Line" Within the Meaning of the TCPA.

11. At all times mentioned herein, and based on the technology employed by Comcast's Xfinity Voice service, calls to the 7904 Number were made to both Rubi's cellular telephone and her residential landline telephone. Below is a screenshot from Rubi's account page on the Xfinity Voice website:

3

| STATUS | NUMBER | TYPE | RINGS | |
|---|---|---|---|---|
| ✓ | (954) 404-7904 | HOME | 5 | ✎ |
| ✓ | (954) 404-7904 | MOBILE | 5 | ✎ |

You can have up to 5 phone numbers, including your XFINITY Voice number, ring when you get a call. Please make sure at least 1 phone number is active.

Add

12. Each and every incoming call to the 7904 Number is made to, and causes to "ring", **both** Rubi's landline at her residence and her cellular telephone(s).

13. Accordingly, the 7904 Number was assigned to both a "cellular telephone service" within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii) and a "residential telephone line" within the meaning of 47 U.S.C. § 227(b)(1)(B).

14. Because Rubi is charged for voice and data utilization by her cellular telephone carrier, an incoming call to the 7904 Number on her cellular telephone also constitutes a "call … to [a] service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

**II.    Penn Credit Bombards the 7904 Number With Hundreds of Abusive Calls, Without Express Written Consent or an Existing Business Relationship, And In Blatant Disregard For The Privacy Interests of Rubi and Her Eight Month Old Infant Child.**

15. Since Rubi was assigned the 7904 Number in September 2013, Penn Credit has repeatedly called the 7904 Number at various times of the day, attempting to communicate with a prior subscriber of the 7904 Number for purposes of collecting a debt.

16. Each of Penn Credit's debt collection telephone calls originated from 1 (800) 900-1370.

17. The following image is a screenshot of Rubi's Xfinity Voice account page, which reveals that Penn Credit calls the 7904 number more than anyone else:

4

| Caller | Phone Number | Frequency |
|---|---|---|
| PENN CREDIT COR | (800) 900-1370 | |
| | (866) 948-2749 | |
| ATT | (713) 821-2502 | |
| | (877) 495-0497 | |
| DUPOTEY RUBI INDIRA | (305) 372-7474 | |
| ACCOUNT RESOLUT | (800) 694-3048 | |

18.  In fact, Penn Credit has called the 7904 Number roughly three-hundred fifty (350) times since it was assigned to Rubi in September 2013. During the just four-month period of March 2015 to the present, Penn Credit called the 7904 number over fifty (50) times, at all hours of the day and night.  Each of Penn Credit's incoming calls were received and/or missed by both Rubi's landline and cellular telephone.

19.  Penn Credit's incessant calls at all hours of the day and night, including on weekends, have on several occasions caused Rubi's infant son to have difficulty falling asleep and to be awakened from sleep. They have interrupted family meals and other family interactions.  They have tied up Rubi's cellular and landline telephones and prevented her from making and receiving other important calls to and from friends and family.

20.  All telephone contact by Penn Credit and/or affiliates, subsidiaries, or agents of Penn Credit to Rubi occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).  All telephone calls by Penn Credit and/or affiliates, subsidiaries, or agents of Penn Credit to Rubi used an "artificial or prerecorded voice" within the meaning of 47 U.S.C § 227 (b)(2)(B).

21.  Rubi did not provide "express consent" or any other form of consent allowing Penn Credit and/or affiliates, subsidiaries, or agents of Penn Credit to place telephone calls to the 7904 Number.

22.  Rubi never provided Penn Credit with express or implied consent to be contacted via her cellular telephone or landline telephone.

23. Rubi has never been a debtor of, conducted business with or otherwise formed a business relationship with Penn Credit. Even if a previous subscriber of the 7904 Number was a debtor of or otherwise had a business relationship with Penn Credit, that fact does not exempt Penn Credit's calls to Rubi's residential landline from TCPA liability. *See Watson v. NCO Grp., Inc.*, 462 F. Supp. 2d 641, 644 (E.D. Pa. 2006) ("Since an erroneously called non-debtor has no such existing business relationship, it follows that the purview of the FCC's exemption does not extend to the type of calls made in this case.").

24. Because Rubi is a non-debtor who has never had any sort of relationship with Penn Credit, the complained of telephone calls to Rubi's residential landline violated Rubi's privacy rights. As such, the complained of calls do not constitute commercial calls that do not adversely affect privacy rights, and are therefore not exempt from TCPA liability. *See* 47 U.S.C. § 227(b)(2)(B); 47 C.F.R. § 64.1200(a)(3); *see also Watson*, 462 F. Supp. 2d at 644-45 ("The fact is, by virtue of staying out of debt, a non-debtor has vastly greater privacy rights than someone who has fallen into debt. While the FCC has declared that a debtor's privacy rights are not adversely affected when he receives debt collection calls, the Court is convinced that a non-debtor's rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop.").

25. The complained of phone calls were not made for emergency purposes within the meaning of 47 U.S.C. § 227(b)(1)(A)(i).

### III. Rubi Demands That Penn Credit Cease Calling The 7904 Number, But to No Avail.

26. On several occasions since being assigned the 7904 Number in September 2013, Rubi and/or her husband have demanded, via Penn Credit's automated system and to live Penn Credit representatives, that Penn Credit cease calling the 7904 Number, advising Penn Credit that they are erroneously attempting to reach a prior subscriber of the 7904 Number.

27. Nevertheless, Penn Credit has called the 7904 Number approximately three-hundred (300) times after Rubi and/or her husband demanded that Penn Credit cease calling the 7904 Number.

28. Penn Credit's harassing calls to the 7904 Number continue to this day.

29. Penn Credit has left Rubi no other option but to file the instant lawsuit in order to end the barrage of calls and to obtain redress for the complained of TCPA violations.

## VI.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATIONS OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

30. Rubi incorporates by reference the paragraphs 1-29 of this Complaint as if fully stated herein.

31. The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

32. As a result of the alleged negligent violations of 47 U.S.C. § 227, Rubi is entitled to an award of $500.00 in statutory damages for each and every call placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

33. Rubi is also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

34. Rubi also seeks an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

35. Rubi incorporates by reference paragraphs 1-29 of this Complaint as if fully stated herein.

36. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

37. As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, Rubi is entitled to treble damages of up to $1,500.00 for each and every call placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

38. Rubi is also entitled to, and does seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

39. Rubi also seeks an award of attorneys' fees and costs.

## VII.
## PRAYER FOR RELIEF

**WHEREFORE**, Rubi prays for relief and judgment in her favor, as follows:

1. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Rubi seeks $500.00 in statutory damages for each and every call that violated the TCPA;

2. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Rubi seeks treble damages, as provided by the statute, of up to $1,500.00 for each and every call that violated the TCPA;

3. Injunctive relief prohibiting such violations of the TCPA in the future;

4. An award of attorneys' fees and costs to counsel;

6. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Rubi hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: July 27, 2015　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: */s Frank S. Hedin*

　　　　　　　　　　　　　　　　　　　　**CAREY RODRIGUEZ**
　　　　　　　　　　　　　　　　　　　　**MILIAN GONYA, LLP**

        David P. Milian
        Florida Bar No. 844421
        dmilian@careyrodriguez.com
        Frank S. Hedin
        Florida Bar No. 109698
        **fhedin@careyrodriguez.com**
        1395 Brickell Avenue, Suite 700
        Miami, Florida 33131
        Telephone: (305) 372-7474
        Facsimile:  (305) 372-7475

*Attorneys for Plaintiff*